8095

SPEAKS v. SOUTHERN RAILWAY CO.—CAROLINA DIVISION.

CARRIER—PASSENGER—PUNITIVE DAMAGES.—Under the evidence in this case a verdict for punitive damages for failure to furnish a berth, according to contract, is sustained on the ground that a reckless disregard of the rights of plaintiff may be inferred from several acts.

MR. JUSTICE WOODS *dissents.*

Before PRINCE, J., Bamberg, Winter term, 1911. Affirmed.

Action by Nettie and A. McB. Speaks against Southern Railway Company—Carolina Division. Defendant appeals.

*Messrs. Harley & Bert,* for appellant, cite: *As to punitive damages:* 62 S. C. 269; 69 S. C. 444; 2 Suth. on Dam. 1093; Thomp. on Neg. 476; 29 S. C. 271; 16 Ency.; 64 S. C. 507; 60 S. C. 75; 65 S. C. 42; 12 Ency. 24-5; 2 Hilt. 440; 120 N. C. 320; 90 Tex. 275; 16 L. R. A. 347; 15 Minn. 49; 45 Minn. 53; 75 S. C. 355; 69 S. C. 539.

*Messrs.* ,*S. G. Mayfield* and *H. M. Graham,* contra, cite: *As to punitive damages:* 65 S. C. 38; 81 S. C. 322; 79 S. C. 152; 83 S. C. 452; 65 S. C. 271; 62 S. C. 270.

February 14, 1912. ·The opinion of the Court was delivered by

Mr. CHIEF JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff, Mrs. Nettie Speaks, on account of the defendant's refusal to provide for her, a lower berth in a Pullman car, in accordance with the terms of the contract entered into by them.

The allegations of the complaint, material to the questions presented by the exceptions, are as follows:

"That the plaintiffs, being desirous of going from the city of Bamberg on defendant's trains, to the city of Baltimore, bought a ticket from defendant's said agent, and paid the price asked therefor by the defendant.

"That before buying the said ticket, and being desirous of securing sleeping accommodations, the plaintiffs applied to the agent of defendant at the city of Bamberg, for said accommodations to be reserved, and the agent of the said defendant on said application, applied to the traveling passenger agent of the defendant, to make said reservation, and was informed by the said traveling passenger agent 'that said reservation had been made for the plaintiff,' and thereupon the plaintiffs purchased a ticket from the said agent at Bamberg, to the city of Baltimore, over the roads of the defendant herein and its connecting lines, and tendered the full pay for the said ticket, together with the reservation of sleeping apartments, as aforesaid, but the agent of the defendant at Bamberg, declined to receive the amount of the reservation, which had been allotted to the plaintiffs, and directed them to pay for the said reservation aboard the cars at Columbia, which the connecting railway arranged with the railway of defendants.

"That these plaintiffs, relying upon the good faith of the defendant, its agent, servants and employees, as aforesaid, bought the ticket, as aforesaid, from the city of Bamberg to the city of Baltimore, over the lines of the defendant and its connecting lines, and paid the price asked therefor in the city of Columbia, according to the arrangements agreed upon with the agent, servant and employee of the defendant, and these plaintiffs arranged to take the train, and to occupy the sleeping apartments which had been so assigned unto them, but before taking said train inquired of the agent, servant and employee of the defendant in the city of Columbia, as to the pay for said reservation, and was directed by him to pay the same aboard the train, and that said reservation had been made, as was evidenced by the telegram sent by the traveling passenger agent of the defendant, to the agent of the defendant at Bamberg, S. C.

"That these plaintiffs boarded the said train, believing that said reservation was made and upon the assurance of the officer, agent, servant and employee of the said defendant herein, to the person in charge of the said sleeping reservations connected with said train, assuring them that the reservations were made, and that they would be furnished with the same aboard said train.

"That the plaintiffs boarded the train, as aforesaid, with the said assurance of the agent, servant and employee of the defendant herein, of its agents in charge of the said sleeping reservation, but the said agent, servant and employee refused to put these plaintiffs in possession of the reservation, which had been made to them, although plaintiff tendered and often entreated and insisted, upon their being given the reservation assigned to them, so that these plaintiffs were compelled to be up and ride in the open cars, without the sleeping reservation that had been made for them, and for which they had agreed with the defendant, its agent, servant and employee, as aforesaid, should be furnished, and without such reservation these plaintiffs would

not have bought said ticket, so that the plaintiffs grew weary, were broken down in health, and for a long time, made sick by the acts and conduct of the defendant, its agent, servant and employee.

"That the acts of the servants, agents and employees of the defendant was wanton, wilful, malicious, wicked, unlawful and was intended to, and did subject these plaintiffs to great hardships, and made them sick and unfit to attend to their business, and entailed upon them additional costs, hardships and privations, to their damage fifteen hundred ($1,500.00) dollars."

There was a motion for a nonsuit, also for the direction of a verdict, but both motions were refused.

The jury rendered a verdict in favor of the plaintiff, Mrs. Nettie Speaks, for six hundred and twenty-five dollars.

The defendant appealed upon exceptions, all of which were withdrawn except those raising the question whether there was any testimony, tending to show that the plaintiff was entitled to punitive damages.

There was testimony tending to sustain all the allegations of the complaint, with reference to the plaintiff, Mrs. Nettie Speaks; and, it tends to show a reckless disregard of her rights.

It would subserve no useful purpose to discuss the testimony at length.

The rule is thus stated in *Railroad* v. *Partlow,* 14 Rich. 237, and quoted with approval in *Dantzler* v. *Cox,* 75 S. C. 334, 55 S. E. 774: "It may be, that no one of the facts would of itself warrant the inference and yet, when taken together, they may produce belief, which is the object of evidence."

Judgment affirmed.

MR. JUSTICE HYDRICK *concurs.*

MR. JUSTICE WOODS, *dissenting.* The allegations of the complaint upon which the plaintiffs recovered a verdict for six hundred and twenty-five dollars are fully set out in the opinion of the Chief Justice. The testimony on the part of the plaintiffs was to the effect that the defendant had contracted to furnish Mrs. Speaks with a lower berth on a sleeping car from Columbia to Baltimore, and that it failed to discharge the duty it had assumed to her as a passenger on its train. For such breach of duty the plaintiffs were of course entitled to recover the actual damages which resulted. But it seems to me there was not a particle of evidence warranting the conclusion that the defendant's agents were guilty of any wanton or wilful disregard of the plaintiffs' rights, and that the motion for nonsuit as to the cause of action for punitive damages should have been granted.

Courteous consideration is the rule of conduct of nearly all men in their treatment of each other, and none but the abnormally brutish are wilfully or wantonly inconsiderate of the rights of women. It follows that when there is a breach of duty owed by one man to another, the presumption of fact is strong that it is due to inadvertence or mistake and not to wilfulness or wantonness; and the presumption is still stronger when the breach is of a duty owed to a woman.

The train was run on the 18th of August as a special excursion train from Augusta to Baltimore. Accepting as true the testimony of the plaintiffs, no inference can be drawn from it more adverse to the defendant than that the train was crowded and that the failure to give Mrs. Speaks a lower berth was due to confusion and mistake in the engagement and assignment of the berths. The evidence that a passenger getting on at Chester claimed and was allowed a berth in the section where the plaintiffs were sitting does not tend to prove wanton or wilful disregard of the rights of Mrs. Speaks by giving preference to another passenger, for the plaintiffs did not claim to have engaged

a berth in that particular section, and it does not appear that the Chester passenger got a lower berth which was the only kind the plaintiffs would accept. There was not the slightest evidence of disrespect to Mrs. Speaks or her husband; on the contrary, both of them testified that the conductor assured them that there had been a "mix-up," but that he would do his best to furnish a berth and that this assurance was repeated up to the moment when they insisted on leaving the train at Chester with the intent of taking a berth on the next train.

For these reasons I think the Circuit Court erred in refusing the motion for a nonsuit as to the alleged cause of action for punitive damages.