## 11791

### STATE v. DOZIER

(128 S. E., 726)

INTOXICATING LIQUORS—CONVICTION OF STORING AND POSSESSING HELD SUSTAINED BY EVIDENCE.—Evidence *held* sufficient to sustain conviction of storing and possessing intoxicating liquor.

Before ARTHUR GASTON, SPECIAL JUDGE, York, 1924. Affirmed.

O. B. Dozier was convicted of storing and possessing intoxicating liquor and he appeals.

*Messrs. Dunlap & Dunlap,* for appellant, cite: *Prosecution must show possession by defendant as an individual:* 124 S. E., 337; 40 S. E., 99. *Court must determine whether evidence is sufficient to sustain conviction:* 43 S. E., 533; 106 S. E., 813; 92 S. E., 871; 88 S. E., 706; 120 S. E., 557.

*Mr. J. Lyles Glenn, Jr., Solicitor,* for the State, cites: *Weight of evidence:* 123 S. E., 258; 120 S. E., 359; 123 S. E., 765; 122 S. C., 493; 62 S. C., 378; 61 S. C., 22. *"Storing" defined:* 68 S. C., 169; 63 S. C., 102. *Evidence of unlawful purpose:* 120 S. C., 400.

June 26, 1925.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement appears in the record:

"The above-entitled action is one in which the appellant,

O. B. Dozier, was charged with violation of the Prohibition Act, to wit, storing and having in possession corn whisky.

"The uncontradicted testimony shows that Mr. Dozier operated a small grocery store and filling station about 3 miles from Rock Hill, on the road leading from Rock Hill to Charlotte, N. C., and that he managed the place which was owned by one Sid Parrish, who was convicted at a former term of Court for having in possession ginger, and he is now serving a sentence on the county chain gang, and that, previous to the finding of this particular whisky Dozier had charge for a period of about 90 days.

"That the whisky was found in a barrel that had been sunken in the branch, with the top on it and hinges, and it was not locked, and close around and on the side of the path leading to where the whisky was found there was found one-half dozen fruit jar tops that had been thrown down, some looked fresh and some old. The whiskey was not on the property owned by Parrish or under the control and management of Dozier, and the whisky was found 400 steps from the store or filling station under the control of Dozier.

"That there were 3 or 4 people working around this filling station. That at the time of this seizure there was no whisky or anything found in the storehouse. There was a house about 25 yards from the station, formerly occupied by Sid Parrish, and Dozier had the key and gave the officers the key to search the house, and there was nothing found in the house except some traps and where planks had been taken loose under the window. There was a newly beaten path leading from the filling station by the home of Sid Parrish and leading to where the whisky was found. There was an old path leading on from this particular path which had not been traveled much, only found one or two tracks in it. There was a negro house close by. There might have been some one sleeping in the Sid Parrish house at night. There was some stuff in there (meaning furniture). This old path led on across the platation of Dr. Beatty and to the Stewart farm, a dairy farm.

"The testimony of the defendant was: 'There was 3 people working at the filling station, and there was a vacant space near the filling station or store where the cars could come and park and people get lunch; that he had under control the property where the whisky was found; that parties entering his store came from the direction indicated by the path—some from the cement; that there are fifteen or sixteen negro houses scattered around near this place and they came and bought oil, etc. Dozier lives in the City of Rock Hill and does not stay at the filling station.'

"After the close of the testimony by the state, the defendant made a motion to direct a verdict on the ground that there was no evidence, either circumstantial or direct, by which the defendant could be connected with the whisky, and this motion was refused by the Court. The defendant was then placed on the stand and after the close of his testimony another motion was made on the same ground, and on the additional ground that the defendant had no control over this property, and, in view of the fact that the jury must be convinced beyond a reasonable doubt, he should be acquitted. This motion was refused."

The record also sets forth the testimony of each witness, but we do not deem it necessary to reproduce it in addition to the foregoing statement of the facts.

The exceptions are as follows:

(1) "The Court erred in refusing the motion after the close of the testimony of the state's witnesses for a directed verdict. The error being there was no evidence, direct or circumstantial, to in any way connect the defendant with either the ownership or control or management of the whisky found.

(2) "The Court erred in submitting to the jury any question of fact in this case as the evidence conclusively shows that there were no circumstances to connect the defendant with same. There was evidence that there were others living in closer proximity to the whisky found than

the defendant, and there was evidence by the state that this was a place where people were accustomed to go and stay around.

(3) "The Court erred in refusing a motion to direct a verdict after the close of all of the testimony. The error being that the defendant showed conclusively, and uncontradicted, that this path was used by other persons coming to and from the store, and giving to the defendant the benefit of a reasonable doubt, the Court should have granted this motion.

(4) "That it was shown conclusively by the testimony of the defendant, and uncontradicted, that he had no control, management over the property or any knowledge of the whisky, and giving to the defendant the benefit of a reasonable doubt, the Court should have granted this motion.

Even if certain parts of the testimony standing alone would not have been sufficient to sustain the verdict, nevertheless, when the testimony is considered in its entirety, it is susceptible of the inference that the defendant was guilty. *Dantzler v. Cox,* 75 S. C., 334; 55 S. E., 774. *State v. Abelson,* 108 S. C., 356; 94 S. E., 872. These authorities are cited with approval in the case of *Valentine v. S. A. L. Ry Co.,* 131 S. C., 382; 127 S. E., 724.

Affirmed.

MR. JUSTICE MARION and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MESSRS. JUSTICES WATTS and COTHRAN dissent.

MR. ACTING ASSOCIATE JUSTICE R. O. PURDY: I concur in the foregoing opinion of Chief Justice Gary. The presence of the lunch stand, and of the loafers, and the evidence of the traveling of the path from the place of business under the control of the defendant to the place of the location of the whisky, taken in connection with the other circumstances, furnish ample, consistent circumstantial evidence to warrant the conviction of the defendant.

MR. JUSTICE COTHRAN (dissenting): ·The defendant was convicted of the offense of storing and having in his possession intoxicating liquor in violation of the Prohibition Act.

The evidence tended to show that one Sid Parrish operated a filling station, and from it a well-beaten path led to and across a branch some 400 yards away on the premises of another; that submerged in the branch was found by the officers a barrel containing a large quantity of corn liquor in bottles. Parrish had at the time of the discovery been convicted of violating the Prohibition Act and was serving time on the chain gang. The defendant had been employed by Parrish, and was at the time in charge of the filling station and lunch counter.

There was no other evidence to connect the defendant with the possession of the liquor, or even with knowledge of its presence there, or of Parrish's connection with it.

Assuming that the evidence would have been sufficient to carry the case to the jury if Parrish had been the defendant on trial, we do not think it was sufficient as against the defendant, an employee, in the absence of evidence, that he knew of its presence and of Parrish's connection with it. See *Feinberg v. U. S.* (C. C. A.), 2 F. (2d.), 955.

The judgment of this Court should be that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for judgment in favor of the defendant, under rule XXVII.

MR. JUSTICE WATTS concurs.